1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11 WEATHERBY LOCUMS INC., a Florida corporation, | Case No. 1:20-cv-00949 JLT CDB |
| 12 Plaintiff, | ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| 13 v. | |
| 14 KERN COUNTY HOSPITAL AUTHORITY, | (Docs. 30, 31) |
| 16 Defendant. | |

18      The matter before the Court arises from a contractual dispute between Weatherby

19  Locums, Incorporated, a locum tenes providing staffing services, and Kern County Hospital

20  Authority, a government entity operating Kern Medical Center.  Pursuant the terms of the parties'

21  professional services contract, Weatherby Locums supplied Kern County Hospital Authority with

22  physicians to provide clinical services on a temporary basis at Kern Medical Center.  After Kern

23  County Hospital Authority refused to pay provisional "contract buyout" fees, Weatherby Locums

24  commenced litigation and filed suit against Kern County Hospital Authority for breach of

25  contract and breach of the implied covenant of good faith and fair dealing (Docs. 1, 18).  Pending

26  before the Court is Kern County Hospital Authority's motion for summary judgment. (Doc. 30.)

27  After full consideration of the parties' written submissions, the Court finds genuine dispute of

28  material facts precludes summary judgment and **DENIES** Kern County Hospital Authority's

1  motion.

2  **BACKGROUND**[1]

3  **I.      PROCEDURAL BACKGROUND**

4  On February 12, 2021, plaintiff Weatherby Locums, Inc. filed its first amended complaint

5  (FAC) alleging defendant Kern County Hospital Authority ("KCHA") alleging two causes of

6  action: (1) breach of contract and (2) breach of breach of the covenant of good faith and fair

7  dealing claims. (Doc. 18.)[2]   KCHA timely filed its amended answer (Doc. 19) and

8  counterclaimed unfair and unlawful business practices, a violation of California Business &

9  Professions Code.  (*Id.*, at 11-12; *see also* Doc. 22 Weatherby's Answer to KCHA's

10  Counterclaim.)  On September 22, 2022, KCHA filed a motion for summary judgment asserting

11  contract modification entitles judgment in its favor on both of Weatherby's claims.  (Doc. 30.)

12  Weatherby timely filed its Opposition (Doc. 37) with additional evidence in support (Docs. 40,

13  41).[3]  Before the Court is KCHA's motion for summary judgment, or in alternative partial

14  summary judgment.  (Doc. 30.)

15  **II.     UNDISPUTED FACTS**

16  The parties agree the following facts are undisputed: On or about March 9, 2011,

17  Weatherby and the County of Kern entered into an Agreement for Professional Services

18  ("Agreement").  (Doc. 41 at ¶ 3, Ex. A.)  Pursuant to the Agreement, Weatherby supplied

19  physicians, who would provide clinical services on a temporary basis, to Kern Medical Center

20  ("KMC").  (*Id.* at ¶ 4.)  On July 1, 2016, KCHA acquired KMC from the County of Kern.  (*Id.* at

21  ¶ 5.)  Weatherby continued to perform under the terms of the Agreement and presented

---

22  [1]  The facts are taken from Weatherby's Amended Complaint ("FAC") (Doc.18); KCHA's Amended Answer (Doc.

23  19); KCHA's Statement of Undisputed Material Facts which is incorporated into its Motion for Summary Judgment (Doc. 30); Weatherby's Separate Statement of Undisputed Material Facts (Docs.40,

24  41), additional facts incorporated into Weatherby's Opposition (Doc. 37, Ex. A), and a review of the corresponding record citations and submitted exhibits.

25  [2]  The Court granted the parties' stipulation and proposed order (Doc. 17).  The parties stipulated allowing plaintiff

26  Weatherby to file a first amended complaint "which adds additional factual allegations" and defendant KCHA to file an amended answer "which adds additional affirmative defenses and adds a counterclaim against Plaintiff for Unfair and Unlawful Business Practices in Violation of Cal. Bus. & Prof. Code."  (Doc. 16.)

27  [3]  The Court is aware the parties filed cross-motions for summary judgment (Docs. 30, 31), and Weatherby Locum's

28  motion for summary judgment on KCHA's counterclaim remains pending.  (*See generally* Docs. 31, 32, 43, 44, 45.)

physicians to KCHA.  (*Id.* at ¶ 6.)  From 2016 to the end of 2019, Weatherby presented KCHA with the following physicians to provide temporary clinical services at KMC: Doctors David Jeffcoach, Matthew Hannon, Matthew Tadlock, Nicole Thomas, Harry Elshire, Amelia Pasley, and Marvin Atchison ("Physicians").  (*Id.* at ¶ 7.)  KCHA accepted the Physicians.  (*See generally* Doc. 41 at ¶ 16.)  Upon acceptance of the Physician's assignment, Weatherby issued Confirmation Letters ("Confirmation") regarding Doctors Hannon, Jeffcoach, and Tadlock ("Physicians A") to KCHA.  (*Id.* at ¶ 10.)  Weatherby did not issue Confirmation regarding the accepted assignments of Doctors Thomas, Elshire, Paisley, and Atchison ("Physicians B").  (*Id.* at ¶ 11.)

The parties do not dispute the existence of the Agreement and do not dispute that the Agreement contains provisions regarding the Confirmation Letters and Contract Buyout Fee.  (*See generally* Docs. 30, 37, 40, parties' Ex. A (Agreement), (Docs. 30-2, 40-1.)  Largely important to the pending motion are Agreement provisions:

Provision 4E. Failure to issue a Confirmation. No Confirmation Necessary.  "Should Weatherby fail to issue a Confirmation for any Assignment . . . such circumstance shall not abrogate Client's responsibility for payment of Fees for the Physician Coverage received or payment of a Contract Buyout Fee in the event Client or a third party offers Work, as described and defined below, to a Physician and Physician accepts.  (Ex. A, Docs. 30-2, 40-1.)

Provision 6A. Contract Buyout.  Client Offer of Position to Physician. Client agrees that should it, or any third party introduced to Physician by Client . . . offer Work (as defined below) to any Physician introduced to Client by Weatherby for a period of 24 months after the first date of introduction to Client" or "if Physician has furnished Physician Coverage for Client, for a period of 24 months after the last day of Physician's last assignment with Client under this Agreement, . . . Client shall pay to Weatherby as consideration for the introduction a contract buyout fee in the amount as listed in the related Confirmation ('Contract Buyout Fee') per Physician, so hired or engaged regardless of whether or not that Physician actually performed work for Client through Weatherby."  (*Id.*)

Provision 6C. Contract Buyout Fee Payment Terms.  "Client shall notify Weatherby at

least thirty (30) days in advance of offering Work (as defined below) to any Physician.  If any Physician accepts Work, the Contract Buyout Fee must be paid in full prior to the first day the Physician performs services in the new position. . .."  (*Id.*)

Provision 6D. Definition of Work. "For purposes of this Agreement, 'Work' shall mean an offer to word, said offer being either verbal or written, on a part of full time basis, temporary or permanent, directly as an employee or independent contractor or indirectly when arranged through another staffing company or medical group."  (*Id.*)

## STANDARD OF DECISION

Federal Civil Procedure Rule (FRCP) 56(a) requires the Court to grant summary judgment as to any claim or defense when the movant, by citing to specific materials in the summary judgment record, shows there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), (c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A general dispute exists if a rational factfinder considering the evidence in the record, could find in favor of the non-moving party.  *See Anderson*, 477 U.S. at 248-9.  A fact is material if, under the substantive law governing the claim or defense at issue, the fact might affect the outcome of the case.  *Id.* at 248.

In evaluating a party's motion for summary judgment, the Court's role is narrowly limited to assessing the threshold issue of whether a genuine dispute exists as to material facts requiring trial.  The court never weighs evidence or finds facts.  *See Anderson*, 477 U.S. at 255. The Court "view[s] the facts and draw reasonable inferences in the light most favorable" to the nonmoving party, without making credibility determinations or weighing conflicting evidence.  *See Walls v. Cent. Contra Costa Cnty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011); *see also Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks omitted).  A party is entitled to summary judgment "only if, taking the evidence and all reasonable inferences in the light most favorable to the non-moving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law."  *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1104 (9th Cir. 2020) (quoting *Tauscher v. Phx. Bd. of Realtors, Inc.*, 931 F.3d 959, 962 (9th Cir.

1   2019)).

2      The party moving for summary judgment bears the initial burden of identifying the

3   materials in the summary judgment record, including portions of the pleadings, discovery and

4   disclosures on file, and affidavits, that demonstrate the absence of a genuine issue of material

5   fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the non-moving party has the

6   burden of proof at trial, the movant may carry its burden by merely pointing out that there is "an

7   absence of evidence" in support of the non-moving party's claims or defenses. *Id.* at 325. If the

8   movant carries its initial burden, the burden of going forward shifts to the non-moving party to

9   show a genuine dispute of material fact remains for the factfinder to resolve. *Id.* at 324. The non-

10  moving party must go beyond the pleadings and show adequately probative evidence-by its own

11  affidavits or discovery- set forth specific facts creating a genuine issue for trial. *Id.*; *Matsushita*

12  *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "[T]here is no issue for trial

13  unless there is sufficient evidence [supporting] the non-moving party" to the extent that a jury

14  could return a verdict in its favor. *Anderson*, 477 U.S. at 249. "In determining whether the non-

15  moving party has presented sufficient evidence to proceed to trial, the Court is bound by the

16  traditional allocation of function between judge and jury." *Id.* at 255. Credibility determinations

17  and the weighing of the evidence are functions of a jury, not a judge. *Id.* If the non-moving party

18  does not produce evidence to show a genuine dispute as to a material fact, the moving party is

19  entitled to summary judgment. *See Celotex*, 477 U.S. at 323.

20     In ruling on a motion for summary judgment, inferences drawn from the underlying facts

21  are viewed in the light most favorable to the non-moving party. *See Matsushita*, 475 U.S. at 587.

22  Thus, when parties file cross-motions for summary judgment, the Court "evaluate[s] each motion

23  separately, giving the nonmoving party in each instance the benefit of all reasonable inferences."

24  *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006). The Court considers

25  each party's cited evidence, "regardless under which motion the evidence is offered." *Las Vegas*

26  *Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

27                                    **DISCUSSION**

28   **I.      EVIDENTIARY OBJECTIONS**

Pursuant to L.R. 260(a)-(b), both parties made evidentiary objections to the evidence presented in support of, and in opposition to, the pending motion (Doc. 30).  (*See* Docs. 41, 47.)  Before the Court addresses summary judgment arguments, the Court must first evaluate the parties' evidentiary objections.

A party may object that the material used to "dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).  In evaluating the merits of a motion for summary judgment, a court may only consider admissible evidence.  Fed. R. Civ. P. 56.  "A court must rule on material evidentiary objections." *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010).  At the summary judgment stage, district courts consider evidence with content that would be admissible at trial, even if the form of the evidence would not be admissible at trial.  *See Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119-20 (E.D. Cal. 2006) (even if evidence is presented in form that is currently inadmissible, it may be considered on motion for summary judgment so long as admissibility defects could be cured at trial); *Sali Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1005 (9th Cir. 2018) ("the court must review the evidence in light of what would be admissible before either the court or jury" [citation omitted]).

### A.  Weatherby's Objection

Weatherby objects to the material referenced and used to support KCHA's statement 15, "Thygerson Dec. ¶¶ 6-8, Exhibits B, C – Confirmations" (Doc. 30-1 at 5), citing Fed. R. Civ. P. 37(c)(1) as the basis for exclusion.  (Doc. 41 at 5.)  Weatherby objects to the admissibility of the documents attached to Mr. Thygerson's declaration as Exhibit C asserting the documents "were not produced during discovery" and were not "identified in [KCHA's] Rule 26 initial disclosure." (*Id.*)  Weatherby points the Court to "the exhibit numbers of the documents used in the parties' depositions" and corresponding bates stamps, noting the documents attached as Exhibit C have different exhibit numbers "are not bates stamped like other documents received from [KCHA]." (Doc. 37 at 9, n.1.)

Federal Civil Procedure Rule 26(a) requires a party, "without awaiting a discovery request, provide . . . the name of each individual likely to have discoverable information that the

disclosing party may use to support" a pretrial motion. *San Francisco Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 733 (N.D. Cal. 2011); Fed. R. Civ. P. 26(a)(1)(A)(i); *see also* Adv. Comm. Notes to 2000 Amendment to Fed. R. Civ. P. 26(a)(1).  Despite the requirement, mandatory early disclosure is limited to information reasonably available to the party which includes information known to a party and information obtainable through reasonable investigation.  Fed. R. Civ. P. 26(a)(1)(E); *see* Adv. Comm. Notes to 1993 Amendment to Fed. R. Civ. P. 26(a). Moreover, a party need not produce documents a the time of making their Rule 26 disclosure. *Id*. Rather, "a description by category" suffices. *Id*.

KCHA responds to Weatherby's objection in a footnote stating, "the documents included in Exhibit C are confirmation agreements sent from [Weatherby] to [KCHA] for physicians for which plaintiff is not seeking a contract buyout fee [;]" therefore, Weatherby "already had access and knowledge of the documents." (Doc. 46 at 17, n.2.)  KCHA also states it "identified the category of all communications between Plaintiff and Defendant in its initial Rule 26 disclosure." (*Id.*) Weatherby does not claim that KCHA did not identify this category in its initial disclosure, nor does it suggest that Weatherby sought further clarification of this category of documents by propounding discovery. Thus, to the extent the Court relies on Thygerson's declaration in reaching its ruling, Weatherby's objection to the Exhibit C documents is **OVERRULED**.

**B. KCHA's Objections**

KCHA appears to raise seventeen evidentiary objections in response to Weatherby's Opposition evidence (see Doc. 40, "Plaintiff's Separate Statement of Disputed Material Facts"), objecting to Weatherby: Exhibit A ("Agreement") as "misleading and misstates the document"; Exhibit D ("Email chain between S. Grisak and B. Anderson") as "inadmissible hearsay, irrelevant, lacks foundation" and "immaterial to the resolution"; Exhibit E ("Trauma and General Surgery Hospitalist Coverage Services and Medical Director Agreement") as "immaterial to the resolution"; Exhibit F ("Declaration of Eric Leef") as "lacks foundation, improper conclusion or ultimate facts, relevance," and "immaterial to the resolution"; and Exhibit G ("Declaration of Steven Grisak") as "lacks foundation and personal knowledge". (*See generally* Doc. 47.) In addition, KCHA frequently makes "objections" that are not true evidentiary objections, but mere

1    rejections of the facts offered; thereby constituting argumentative assertions.  (*Id.* at 6-11.)

2        Most of KCHA's objections are to Weatherby's statement of disputed material facts[4]

3    (Doc. 40) and question the relevancy and materiality of the evidence. (*See generally* Doc. 47.)

4    The Court does not rely on irrelevant evidence when evaluating motions for summary judgment,

5    and objections premised on relevancy are redundant and "duplicative of the summary judgment

6    standard itself."  *Burch*, 433 F.Supp.2d at 1119.  "A court can award summary judgment only

7    when there is no genuine dispute of material fact.  It cannot rely on irrelevant facts, . . . thus

8    relevance objections are redundant" to the practice of summary judgment and unnecessary to

9    consider in the context summary judgment.  *Anderson*, 477 U.S. at 248 ("Factual disputes that are

10   irrelevant or unnecessary will not be counted."); *see also US E.E.O.C. v. Placer ARC*, 114 F.

11   Supp. 3d 1048, 1052 (E.D. Cal. 2015).  Accordingly, KCHA's "objections to evidence on the

12   ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper

13   legal conclusion" are duplicative and improper for summary judgment, thus, cannot be sustained

14   on these grounds.  *Burch*, 433 F.Supp.2d at 1119.  These objections are **OVERRULED**.

15       To the extent the Court relies on an additional material fact to which KCHA objects, that

16   objection is overruled.  Likewise, any objections based on Federal Evidence Rule 403 are

17   improper in this context; therefore **OVERRULED**.  *Holt v. Noble House Hotels & Resort, Ltd*,

18   370 F. Supp. 3d 1158, 1164 (S.D. Cal. 2019) (explaining "there is no jury that can be misled and

19   no danger of confusing issues") (citing *Montoya v. Orange Cnty. Sheriff's Dep't*, 987 F.Supp.2d

20   981, 994 (C.D. Cal. 2013)).

21       Regarding KCHA's "denied as objected" responses premised on Rule 56(c)(1)(B) as

22   "[t]his fact is immaterial to the resolution of Defendants' Motion" and objections to numerous

23   paragraphs in the declarations of Eric Leef (Weatherby Ex. F, Declaration of Eric Leef, ¶¶ 3, 5-

24   10) and Steven Grisak (Weatherby Ex. G, Declaration of Steven Grisak, ¶¶ 5-7) as "improper

25   conclusion or ultimate facts" with "no evidentiary facts" to support the conclusions, the Court

26   finds the objections superfluous.  "[S]tatements in declarations based on speculation or improper

27   _____

[4] Weatherby's "Separate Statement of Disputed Material Facts in Opposition to [KCHA's] Motion for Summary
28   Judgment" (Doc. 40).

legal conclusions, or argumentative statements, are not facts and likewise will not be considered on a motion for summary judgment." *See Cherewick v. State Farm Fire & Cas.*, 578 F. Supp. 3d 1136, 1155 (S.D. Cal. 2022).  Accordingly, these objections are **OVERRULED**.

KCHA also objects to the declarations as lacking foundation and personal knowledge. However, both Eric Leef and Steven Grisak assert having personal knowledge (*see* Doc. 40-6; 40-7).  For example, Eric Leef, in his capacity as Weatherby Locums Vice President (Doc. 40-6 at 2), would have personal knowledge of Weatherby's business expenditures such as "spend[ing] millions of dollars each year on marketing and recruitment to recruit medical providers to become locum tenens providers." (Doc. 47 at 6); *see also JAE Properties, Inc. v. AMTAX Holdings 2001-XX, LLC*, No. 3:19-CV-02075-JAH-DDL, 2024 WL 538570 (S.D. Cal. 2024).  Likewise, Steven Grisak, in his capacity as a Weatherby Locum Surgery Consultant (Doc. 40-7), would have personal knowledge that "confirmation letters only intended to summarize the Locum Tenens Agreement, not to state all of the details regarding those provisions." (*Id.*)  Grisak worked with KCHA and sent the confirmation letters.  (Doc. 40-7 at 2-3.)  To the extent any declarant makes statements regarding matters of which he or she does not have personal knowledge, the Court does not rely on statements in resolving KCHA's motion.  *See Placer ARC*, 114 F. Supp. 3d at 1052.  Moreover, any other foundational issues can be cured at trial, and KCHA's objections are **OVERRULED**.

In addition, KCHA objects to email exchange between Steven Grisak and Benjamin Anderson (Weatherby Ex. D) as "inadmissible hearsay, irrelevant, and lacks foundation" and identifies the following statement:

> On November 5, 2018, Steven Grisak, a Weatherby senior consultant, emailed Benjamin Andersen, an administrator for Defendant.  In that email, Mr. Grisak said that several of Weatherby's providers had been contacted by other locums companies to work for Defendant. To avoid a situation where Defendant would owe additional fees, Mr. Grisak included a list of the providers who were presented to Defendant by Weatherby.

(Doc. 47 at 4.)  The Court finds KCHA has not clearly identified the portions of emails that qualify as hearsay or stated reasons.  That aside, the Court "may not grant a summary judgment motion on the basis of hearsay evidence, but it may deny a summary judgment motion on the

basis of hearsay evidence as long as it finds that the hearsay evidence would be admissible at trial." *Herbalife,* 2024 WL 1158344, at *4 (citing Fed. R. Civ. P. 56(e)); *see also Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003).  Thus, KCHA's hearsay objections are **OVERRULED**.

Lastly, the Court declines to consider KCHA's objections to the "characterization of" or "purported misstatement of the evidence represented" because the "objections should be directed at the evidence supporting [the] statements." *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic*, Inc., 556 F.Supp.2d 1122, 1126 n.1 (E.D. Cal. 2008).  To the extent KCHA argues any declarant's statements misstate the evidence, those objections also are **OVERRULED** as "go[ing] to the weight of the evidence, not the admissibility of the testimony." *Galvan v. City of La Habra*, No. SACV 12–2103, 2014 WL 1370747, at *4 (C.D. Cal. 2014); *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F.Supp.2d 1023, 1034 (C.D. Cal. 2013).

In conclusion, the Court does not consider any objections premised on evidence being irrelevant, speculative, argumentative, prejudicial, hearsay, or lacking personal knowledge.  The Court finds KCHA's objections fall within these categories and **OVERRULES** the objections (*see generally* Doc. 47).

## II.    DEFENDANT KCHA'S MOTION FOR SUMMARY JUDGMENT

On summary judgment, KCHA argues the affirmative defense of contract modification entitles it to judgment as a matter of law on Weatherby's breach of contract claim and breach of the implied covenant of good faith and fair dealing claim.  Weatherby opposes summary judgment arguing, KCHA (1) "waived its modification affirmative defense" by failing to plead modification in its amended Answer (Doc. 18) and (2) failed to meet its initial burden.  (Doc. 37 at 9.)  Weatherby further contends that even if KCHA did not waive its modification defense and met its initial burden, KCHA is still not entitled to summary judgment because Weatherby has carried its burden establishing a genuine dispute as to material facts exists.

### A.  Federal Civil Procedure Rule 8(c)(1): Affirmative Defense & Waiver

Federal Civil Procedure Rule 8(c) explains the general approach for responding to a party's claims with affirmative defenses and requires a party to "affirmatively state any avoidance

or affirmative defense" in the appropriate responsive pleading.  *Id.*  For example, in preparing an answer, the responsive pleader must "affirmatively state any avoidance or affirmative defense" within the pleading.  Fed. R. Civ. P. 8(c) (1).

Rule 8(c)(1) also contains an enumerated list of affirmative defenses, (accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, and waiver), but the list is non-exhaustive.  *Jones v. Bock*, 549 U.S. 199, 212 (2007).  Absence from the list does not prohibit a party from raising the defense.  *Id.*  In diversity of citizenship cases, state law defines the nature of the defenses.  *See Gorrell v. Sneath*, No. 1:12-CV-00554-JLT, 2013 WL 5469859 (E.D. Cal. 2013) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)); *see also Safety PPE, LLC v. Skanda Group of Industries LLC*, No. CV 21-3967-JFW(PDX), 2023 WL 2558549, at *6 (C.D. Cal. 2023) (citing *Stanford Ranch, Inc. v. Maryland Cas. Co.*, 89 F.3d 618, 624 (9th Cir. 1996) (applying California law in diversity action for breach of contract)).  Thus, an affirmative defense is any defensive assertion of new facts or arguments that, if proven true, reduces in part or defeats entirely a party's claim of relief.  *See Acceptance Cas. Ins. Co. v. MRVK Hosp. Group L.L.C.*, No. 1:21-CV-01359-ADA-EPG, 2022 WL 17455972, at *3 (E.D. Cal. 2022) (citing *Fed. Deposit Ins. Corp. v. Main Hurdman*, 262 (E.D. Cal. 1987)).  Despite state law deference, the Federal Rules of Civil Procedure provide the manner and time in which defenses are raised and Rule 8(c) states a failure to plead risks waiver.  Fed. R. Civ. P. 8(c) (1).  However, the Ninth Circuit has held that in the absence of a showing of prejudice, "an affirmative defense may be raised for the first time at summary judgment."  *See Control Laser Corp. v. Smith*, 705 F. Supp. 3d 1006 (N.D. Cal. 2023) (citing *Pierro v. Cnty. of Sacramento*, 67 F.3d 308 (9th Cir. 1995) (citing *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993).

KCHA responds to Weatherby's waiver argument in its Reply brief arguing it did not waive the defense because "when [KCHA] denied [Weatherby's] interpretation of the Agreement and the Confirmation Agreements, and the allegations in paragraph 9 of the FAC, this defense was put at issue.  Furthermore, [KCHA] pleaded several affirmative defenses encompassing the

11

argument and expressly explained the argument in discovery responses." (Doc. 46 at 6.)  Thus, "[modification] . . . did not need to be pled as an affirmative defense as it was not a new matter but went toward the elements of Plaintiff's prima facie case; i.e., whether Plaintiff could establish the existence of a breach of contract." (*Id.* at 8.)  KCHA also asserts Weatherby cannot establish prejudice because Weatherby "had notice of the basis for [KCHA's] Motion through its Answer" and "express references in discovery responses." (*Id.* at 9.)   KCHA directs the Court to a discovery response served March 18, 2022, stating,

> Plaintiff issued confirmations under the terms of the Agreement which stated that a contract buy-out fee would only be owed if KCHA offered a permanent position to the physician and such position was accepted.  No physician accepted a permanent position with KCHA within twenty-four months of the last date of service under the Agreement.  Under the terms of the Agreement, the confirmations supplemented and became a part of the Agreement.  (Declaration of T. Mark Smith ISO Reply ("Reply Decl.") ¶ 2, Exhibit A.)

(*Id.*)  Accordingly, KCHA contends the "discovery responses identified three affirmative defenses[5] that give rise to the basis for this Motion [;]" therefore, Weatherby "has in no way been prejudiced." (*Id.*)

The Court disagrees with KCHA's implied pleading contention—affirmative defenses must provide fair notice (Fed. R. Civ. P 8(b)(1)(A))—but finds Weatherby has not shown how it has been prejudiced by KCHA's failure to plead modification as an affirmative defense.  *Reuland Electric Co. v. Burgi Engineers LLC*, 2015 WL 12683953, at *6 (C.D. Cal. 2015); *see also U.S. Fire Ins. Co. v. Williamsburg Nat. Ins. Co.*, 2008 WL 5054107, at *7 (E.D. Cal. 2008).  Accordingly, the Court will consider KCHA's modification arguments on the merits.

**B.  Breach of Contract**

KCHA moves for summary judgment on Weatherby's breach of contract cause of action on the arguing Weatherby cannot show KCHA breached the Agreement.  KCHA asserts the Confirmation Letters modified or waived the Agreement terms regarding the type of work required to trigger the Contract Buyout Fee provision "as to only require a contract buyout fee if a

---

[5]  In responding to Weatherby's First Amended Complaint (FAC) (Doc. 18), KCHA pleads twenty-three affirmative defenses in its Amended Answer (Doc.19).

1   doctor was offered a permanent position[.]" (Doc. 30 at 4-5.)  In accordance with the alleged

2   modification, KCHA only owed Weatherby a contract buyout fee if KCHA offered "any of the

3   Physicians a permanent position within 24 months of their presentation by [Weatherby] or end of

4   their assignment through [Weatherby]," and KCHA "never offered any of the Physicians a

5   permanent position within 24 months of their presentation or assignment." (*Id.*)  In the alternative,

6   KCHA argues "[p]artial summary judgment should be granted to the claims related to any

7   specific Physician wherein [Weatherby] cannot show [KCHA] failed to pay the contract buyout

8   fee because the Confirmation [Letters] for any particular doctor modified or waived the terms of

9   the [Agreement] as to that particular doctor." (*Id.* at 5.)

10      Weatherby asserts KCHA "does not dispute that it entered into the Agreement with

11   Weatherby, that Weatherby performed its obligations, that [KCHA] did not pay the contract

12   buyout fees as provided for in the Agreement, or that Weatherby was injured thereby." (Doc. 37

13   at 3.)  *See Brulee v. GEICO Ins. Agency Inc.*, No. 1:17-CV-01434-JLT, 2018 WL 3491680 (E.D.

14   Cal. 2018) (citing *Alcalde v. NAC Real Estate Invs. & Assignments, Inc.*, 316 Fed. App'x 661,

15   662 (9th Cir. 2009) (Under California law, a breach of contract claim has four elements: (1) the

16   existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's

17   breach, and (4) damages to plaintiff as a result of the breach.)); *see also Haberbush v. Clark Oil

18   Trading Co.*, 33 Fed. App'x 896, 898 (9th Cir. 2002) (identifying "agreement, consideration,

19   performance by plaintiff, breach by defendant, and damages" as elements to a breach of

20   contract)). Accordingly, the only element in dispute is breach.

21      Weatherby contends KCHA "failed to meet its burden to support the existence of a

22   modification or waiver with evidence" because "[t]he confirmation letters do not show

23   Weatherby assented to a modification supported by consideration" or show that Weatherby

24   "knowingly intended to waive any of its rights" "by merely issuing [the letters]." (Doc. 37 at 3.)

25   Nevertheless, "even if [KCHA] satisfied its initial burden, [Weatherby] has presented sufficient

26   evidence to raise a genuine dispute as to both modification and waiver." (*Id.*).

27                    **1.  KCHA's Failed to Meet its Burden**

28      KCHA asserts, "[s]ince it is the opposing party's burden to show a triable issue as to

1    matters on which it bears the burden at trial, simply showing that a plaintiff cannot satisfy one

2    element of his claim warrants summary judgment." (Doc. 30 at 7.) However, in this context,

3    "simply showing" Weatherby cannot "satisfy one element of its claim" satisfies only KCHA's

4    initial burden of production. The burden then shifts to Weatherby to show that there is a genuine

5    dispute of material fact.  (*Id.*); *see Celotex*, 477 U.S. at 322-23.

6         On the other hand, "when a defendant moves for summary judgment on an affirmative

7    defense on which he bears the burden of proof at trial, he must come forward with evidence

8    which would entitle him to a directed verdict if the evidence went uncontroverted at trial." *See*

9    *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992). Regardless of whether a moving party

10    has the ultimate burden of persuasion at trial, "if a moving party fails to carry its initial burden of

11    production, the nonmoving party has no obligation to produce anything, even if the nonmoving

12    party would have the ultimate burden of persuasion at trial."  *Nissan Fire*, 210 F.3d at 1103.

13         KCHA's motion is premised on an affirmative defense, therefore, KCHA bears the

14    ultimate burden of persuasion at trial on the issue of modification and must present compelling

15    evidence to obtain summary judgment.  *See Houghton*, 965 F.2d at 1536; *see also Gaines v.*

16    *Beasley*, No. 1:15-CV-1533-LJO-JLT (PC), 2018 WL 5270539, at *3 (E.D. Cal. 2018).  To carry

17    its burden, KCHA must "affirmatively demonstrate that no reasonable trier of fact could find

18    other than for the moving party." *Celotex*, 477 U.S. at 323.  The evidence produced in support of

19    KCHA's motion, Agreement and subsequent Confirmation Letters, purport to negate an essential

20    element of Weatherby's claim, breach, but it does not actually do so.  Though under California

21    law, a contract in writing maybe modified by subsequent agreements, simply asserting the rule

22    does not relieve KCHA of its burden, as the summary judgment movant with the ultimate burden

23    of proof at trial, of showing the existence of a valid modification.  Contracts can be modified by

24    subsequent agreements only with the parties' mutual assent.  *Habtemariam v. Vida Capital*

25    *Group, LLC*, No. 2:16-CV-01189-MCE-AC, 2021 WL 1966325, at *5 (E.D. Cal. 2021) (*citing*

26    *West v. JP Morgan Chase Bank*, 214 Cal. App. 4th 780, 798 (2013)).  Mutual assent is gathered

27    from the reasonable meaning of the words and acts of the parties, and not from their unexpressed

28    intentions or understandings. *Id.* (*citing Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 208

1    (2006); 1 Witkin Sum. Cal. Law, Contracts § 116 (11th ed. 2017).

2                               *i.*    *Mutual Assent*

3           KCHA does not direct the Court to material evidence showing the existence of a valid

4    modification or include any facts material to the issue of modification in its statement of

5    undisputed material facts.  (*See* Doc. 30.)  Modification "is a change in the obligation by a

6    modifying agreement" requiring mutual assent, and "parties to an existing contract may, through

7    mutual consent, [or assent] modify . . .."  *see Howard v. Cnty. of Amador*, 269 Cal. Rptr. 807, 817

8    (Cal. App. 3d Dist. 1990) (quoting Civ. Code, §§ 1689, subd. (a), 1697, 1698) (internal citations

9    and quotations omitted)).  KCHA relies on the Confirmation Letters to establish modification, but

10   KCHA's reliance is misplaced because the Letters lack the requisite assent and do not show an

11   objective, outward manifestation, or intent to modify the Agreement's Contract Buyout provision.

12          Mutual assent is determined objectively based on the reasonable meaning of the parties'

13   words and actions.  *Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165, 173 (2015); *see*

14   *also Trevino v. Acosta, Inc.*, No. 17-CV-06529 NC, 2018 WL 3537885, at *7 (N.D. Cal. 2018).

15   Though "[w]ritten or spoken words or conduct may manifest mutual assent, and action or inaction

16   may imply acceptance [,]" mutual assent cannot exist unless the parties "agree on the same thing

17   in the same sense."  *See White v. Conduent Com. Sols., LLC*, No. 1:23-CV-00113 JLT CDB, 2024

18   WL 4373851, at *10 (E.D. Cal. 2024) (citing *Serafin*, 235 Cal. App. 4th at 173); *see Bustamante*

19   *v. Intuit, Inc.*, 141 Cal. App. 4th 199, 208 (2006).  The "existence of mutual assent is determined

20   by . . . what the outward manifestations of consent would lead a reasonable person to believe."

21   *Habtemariam*, 2021 WL 1966325, at *5 (quoting *Bustamante*, 141 Cal. App. 4th at 208).   In

22   other words, "mutual assent exists when a reasonable person would conclude from the outward

23   conduct of the parties that there was mutual agreement regarding their intent to be bound."

24   *Burch v. Premier Homes, LLC*, 199 Cal. App. 4th 730, 746 (2011) (internal citations omitted)).

25   "Regardless of how broad the terms of [an agreement] are, the [agreement] will only extend to

26   those issues for which it appears that the parties intended to contract."  *Id.*

27          A reasonable person would not find an intent to modify or assent to the alleged

28   modification because the original Agreement itself contains provisions addressing the issuance

                                              15

1   and non-issuance of Confirmation Letters that contradict the alleged assent and modification.  In

2   other words, at the time of contracting, the parties contemplated this very issue.  Consider the

3   following provisions:

4        Provision 4E. Failure to issue a Confirmation. No Confirmation Necessary.  "Should

5   Weatherby fail to issue a Confirmation for any Assignment . . . such circumstance shall not

6   abrogate Client's responsibility for payment of Fees for the Physician Coverage received or

7   payment of a Contract Buyout Fee in the event Client or a third party offers Work, as described

8   and defined below, to a Physician and Physician accepts.  (Ex. A, Docs. 30-2, 40-1.)

9        Provision 6A. Contract Buyout.  Client Offer of Position to Physician.  Client agrees that

10  should it, or any third party introduced to Physician by Client . . . offer Work (as defined below)

11  to any Physician introduced to Client by Weatherby for a period of 24 months after the first date

12  of introduction to Client" or "if Physician has furnished Physician Coverage for Client, for a

13  period of 24 months after the last day of Physician's last assignment with Client under this

14  Agreement, . . . Client shall pay to Weatherby as consideration for the introduction a contract

15  buyout fee in the amount as listed in the related Confirmation ('Contract Buyout Fee') per

16  Physician, so hired or engaged regardless of whether or not that Physician actually performed

17  work for Client through Weatherby."  (*Id.*)

18       The fundamental goal of contract interpretation is to give effect to the mutual intent of the

19  parties as it existed at the time of contracting."  *Schertzer*,109 F.4th at 1208 (quoting *U.S.*

20  *Cellular Inv. Co. v. GTE Mobilnet, Inc.*, 281 F.3d 929, 934 (9th Cir. 2002).  "[I]f the language is

21  clear and explicit, and does not involve an absurdity [,] such intent is to be inferred, if possible,

22  solely from the written provisions of the contract."  *Schertzer*, 109 F.4th at 1208 (*quoting County*

23  *of Fresno v. Fresno Deputy Sheriff's Ass'n*, 51 Cal. App. 5th 282, 292 (2020); Cal. Civ. Code

24  § 1638 (internal quotations marks omitted))).  The Court does not find any ambiguity within these

25  provisions and gives plain meaning to the terms.  The parties clearly considered a scenario in

26  which Weatherby failed to issue Confirmation Letter(s) and accounted for the incident(s) and

27  remedy with express terms.  Therefore, the meaning and intent of the Confirmation Letters were

28  conveyed to KCHA in the Agreement itself; and based on the plain meaning of these terms, the

parties rejected any interpretation implying the Agreement can be modified by Confirmation Letters or the non-issuance of a Confirmation Letter constitute waiver of the Contract Buyout Fee.  A reasonable person would not infer mutual assent and "if the evidence is conflicting or admits of more than one inference, it is for the trier of fact to determine whether the contract actually existed." *Id.* (quoting *Smith v. Simmons*, 638 F. Supp. 2d 1180, 1188 (E.D. Cal 2009) (citing *Bustamante*, 141 Cal. App. at 208 for the legal standard in the context of summary judgment)).

Moreover, if the Court were to infer mutual assent through Weatherby's conduct, issuing Confirmation Letters for Physicians A, not issuing Letters for Physicians B, enclosing each Letter with an electronic signature, and find a unilateral modification occurred that altered KCHA's obligation to pay the Contract Buyout fee, such an inference would yield an interpretation that conflicted well-established principles, ("[A] signature is a valid form of acceptance even if it is in electronic form. *See* Cal. Civ. Code § 1633.7(d)), such an inference would yield an interpretation that conflicts well-established principles.  The Confirmation Letters contain the following language:

> This letter will serve as confirmation that [Physician A][6] will be providing Locum Tenens Surgical Critical Care coverage for Kem County Hospital Authority at Kern County Hospital Authority. . ..  Assignment dates are listed below.  This confirmation is conditional upon approval by our credentialing department.
> …
> If your coverage situation changes, you will need to give 30 days' notice of cancellation of this coverage period.
> . . .
> In the event that your facility were to offer a permanent position to this physician and the physician accepts the position, you will be billed the contract buyout fee in the amount of $4[X][7],000.00.  I will maintain close contact with you both prior to and during your locum tenens experience with Weatherby.

(*See generally* Ex. B, Docs. 30-2, 40-2, Confirmation Letters.)

KCHA focuses on the phrase "[i]n the event that your facility were to offer a

---

[6]  The Court uses "[Physician A]" as a placeholder for the physicians Weatherby issued Confirmation Letters.

[7]  Each Confirmation Letter contained a contract buyout fee specific to the assigned physician.  The Court uses "[X]" as a placeholder indicating the varying fees and dollars.

1  permanent position to this physician and the physician accepts the position, you will be

2  billed the contract buyout fee . . ." (*id.*) and broadly interprets the Letters as "clearly

3  modify[ing] the Agreement as the type of 'work' needed to be offered to the Physicians

4  to trigger the contact buyout fee. (Doc. 30 at 9.) Thus "limiting the [wok] offer type . . .

5  from including 'part or full time basis, temporary or permanent' . . . to only a 'permanent

6  position.'" (*Id.* at 10.)

7         Weatherby contends the Confirmation Letters were "used merely to summarize

8  certain terms on the Agreement without going into meticulous detail." (Doc. 37 at 17,

9  n.6.) Weatherby explains "[t]he fact that the confirmation letters did not list all the

10  myriad kinds of work offers that can trigger contract buyout fees or painstakingly repeat

11  all the other contractual details related to contract buyout fees is no surprise [;]" and

12  '[r]eviewing the confirmation letters in their entirety shows that, rather than modify the

13  Agreement, they were used merely to summarize." (*Id.*)

14         California law provides several principles that guide the Court's inquiry into whether

15  parties mutually intended a proffered meaning or interpretation. The Ninth Circuit has

16  synthesized the principles into factors that consider whether a proffered interpretation: "(1) aligns

17  with the ordinary and popular meaning of the term; (2) gives effect to all of a contract's

18  provisions or renders some superfluous; (3) is supported by reading the contract as a whole; (4)

19  would produce an absurd or inequitable result." *Schertzer*, 109 F.4th at 1208. KCHA's

20  interpretation severely undermines interpretation principles; specifically, principles 2-4:

21         KCH''s interpretation renders much of the Agreement's provisions superfluous and

22  useless. For examples, Provision 20. Sole Agreement states "this document contains the entire

23  agreement of the parties relating to the services, rights, obligations and covenants contained

24  herein and assumed by the parties respectively. No inducements, representations or promises

25  have been made, other than those recited in this Agreement. No oral promise, modification,

26  change or inducement shall be effective or given any force or effect[;]" and (2) Provision 22.

27  Modifications of Agreement stating, "This Agreement may be modified in writing only, signed by

28  the parties in interest at the time of the modification." (Ex. A, Docs. 30-2, 40-1; *see also*

1   Provisions: "2. Duties of Weatherby; 3. Duties of Client; and 4.E Failure to Issue Confirmation.)

2          Adopting KCHA's interpretation of the Letters would render Provisions 20 and 22 useless

3   because the Letters do not require signatures by either party at the time they are issued.   "An

4   interpretation which gives effect to all provisions of the contract is preferred to one which renders

5   part of the writing superfluous, useless or inexplicable." *Schertzer*, 109 F.4th at 1209 (quoting

6   *Carson v. Mercury Ins. Co.*, 210 Cal. App. 4th 409, 420 (2012)).

7          KCHA's interpretation also imposes an alternate meaning of the legal term "modification"

8   and uses the term "deviation" interchangeably. KCHA references Section 2.A of the Agreement

9   as providing support: "[e]ach Confirmation [Letter] shall include the name and specialty of

10   Physician furnishing services hereunder, the dates and location of the Assignment . . .the

11   applicable Contract Buyout Fee . . . and deviations to this Agreement for that Assignment, if

12   any." (*See* Ex. A, Docs. 30-2, 40-1.)  Weatherby notes that while relying "Section 2.A of the

13   Agreement," KCHA "fails to account for Section 2.A's use of the word 'deviation[]' rather than

14   the word 'modification' which is used throughout the Agreement to refer to subsequent

15   agreements by the parties to alter contractual obligations."  (Doc. 37 at 12-13.)  The Court agrees.

16          Contracts are interpreted as a whole "so as to give effect to every part, if reasonably

17   practicable, each clause helping to interpret the other."  Cal. Civ. Code § 1641.  "The meaning of

18   the words contained in a contract is to be determined not from a consideration of the words alone

19   but from a reading of the entire contract".  *Schertzer*, 109 F.4th at 1210 (internal citations

20   omitted)).  Modification is "a legal term of art that refers to alterations or changes to obligations

21   of parties to a contract" (doc. 30 at 13) and "deviation" fails to carry the same legal authority.

22   Section 2.A's use of the word "deviation" strongly "suggests [the] provision was not intended to

23   set out a method for modifying the Agreement."  (*Id.*)  In addition, consider "Provision 6D.

24   Definition of Work" stating, "'Work' shall mean an offer to work, said offer being either verbal

25   or written, on a part of full time basis, temporary or permanent . . ." (Ex. A, Docs. 30-2, 40-1.)

26   Reading the Agreement and Confirmation Letters as a whole, KCHA's proffered interpretation of

27   the Letters' language as "limiting the [wok] offer type . . . from including 'part or full time basis,

28   temporary or permanent' . . .  to only a 'permanent position'" is unsupported.  (Doc. 37 at 13.)

1 An alternate reading that implies meaning to words not expressed would be application of a

2 subjective standard, not an objective standard.

3       Lastly, KCHA's interpretation makes the Agreement "extraordinary, harsh, unjust, or

4 inequitable." *Id.* at 1211 (quoting *Barroso v. Ocwen Loan Servicing, LLC*, 208 Cal. App. 4th

5 1001, 1013 (2012)).  The Court's interpretation of terms in a contract "must be fair and

6 reasonable, not leading to absurd conclusions." *Schertzer*, 109 F.4th at 1210 (quoting *State*

7 *Compensation Ins. Fund v. Dep't of Ins.*, 96 Cal. App. 5th 227, 236 (2023)).

8       Under KCHA's interpretation, the alleged unilateral modification "conferred a benefit on

9 [KCHA] by further limiting the circumstances under which the Agreement would otherwise

10 obligate [KCHA] to pay a contract buyout fee." (Doc. 37 at 12.)  However, this interpretation

11 confers no benefit on Weatherby and KCHA suffers no detriment.  In other words, it lacks

12 consideration.  Consideration is "[a]ny benefit conferred, or agreed to be conferred, upon the

13 promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice

14 suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent

15 lawfully bound to suffer, as an inducement to the promisor." Cal. Civ. Code § 1605.  The benefit

16 or prejudice "must actually be bargained for as the exchange for the promise"—that is, it "must

17 have induced the promisor's promise." *Mitchell v. Specialized Loan Servicing LLC*, 600

18 F.Supp.3d 1112, 1119 (C.D.Cal., 2021) (quoting *Steiner v. Thexton*, 48 Cal. 4th 411, 421 (2010)).

19 Thus, Weatherby properly asserts that "under this view…[KCHA] is obligated to perform no

20 more—and in fact less-- than it was already obligated to perform under the Agreement's contract-

21 buyout provision." (Doc. 37 at 12.)  KCHA's interpretation undermines this very principle, and

22 the Court "avoid[s] an interpretation which will make a contract extraordinary, harsh, unjust, or

23 inequitable." *Schertzer*, 109 F.4th at 1211 (quoting *Barroso v. Ocwen Loan Servicing, LLC*, 208

24 Cal. App. 4th 1001, 1013 (2012)).

25       After applying these principles to the proffered interpretations, the Court finds

26 Weatherby's interpretation of the Confirmation Letters and language are supported and declines

27 to adopt KCHA's proposed interpretation implying modification and waiver.  For reasons

28 thoroughly discussed above, the Confirmation Letters lack mutual assent and fail to show an

1    objective, outward intent to modify the Agreement's Contract Buyout terms.

2                  *ii.*       *The initial burden*

3        KCHA fails to carry its initial burden of production. KCHA begins by asserting

4    Weatherby "misconstrues" its motion "as one solely focused on a narrow affirmative defense[,]"

5    but KCHA "does not concede that [Weatherby] can prove any element of its causes of action"

6    and "merely focused [on] the element of breach that can be determined on Summary Judgment."

7    (Doc. 46 at 6.) KCHA also responds to the contention of failing to satisfy its initial burden

8    asserting "[Weatherby] ignores that it is attempting to recover the contract buyout fee that is

9    entirely predicated on the Confirmation Agreements. Accordingly, [Weatherby] concedes any

10    argument against the assent, consideration or intent that the terms of the Confirmation

11    Agreements are controlling." (*Id.* at 6-7.)

12        The purpose of summary judgment is to "pierce the pleadings and to assess the proof in

13    order to see whether there is a genuine need for trial." *Matsushita*, 475 U.S. at 587. Therefore,

14    the party moving for summary judgment bears the initial burden of informing the court of the

15    basis for its motion and identifying the portions of any declarations, pleadings, and discovery that

16    demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323 (emphasis

17    added); *Soremekun v. Thrifty Payless*, Inc., 509 F.3d 978, 984 (9th Cir. 2007). As the moving

18    party, KCHA must identify the portions of Weatherby's claims that demonstrate the absence of a

19    genuine issue of material fact. KCHA cannot premise or "focus" its motion (Doc. 30) solely on

20    the element of breach" and then raise additional arguments for the first time its Reply brief (Doc.

21    46). *See El Corte Ingles, S.A. v. City Lights, LLC*, No. 1:19-CV-00213-AWI-JLT, 2019 WL

22    6918276, at *9 (E.D. Cal. 2019) (*citing Lerma v. Arends*, 2011 WL 2516173, at *5 (E.D. Cal.

23    2011). "[I]n the Court's view, it would be particularly improper to do so here, given the burden-

24    shifting framework applicable to summary judgment motions." *Id.* (*cf. United States v. Sierra*

25    *Pac. Indus.*, 2012 WL 2571274, at *1–2 (E.D. Cal. 2012)). Accordingly, the Court declines to

26    consider KCHA's new arguments; specifically, those proffered to establish the essential elements

27    of its affirmative defense of modification.

28        To the extent KCHA argues summary judgment is warranted because it is Weatherby's

1    burden to disprove modification and then prove breach under the resulting modified terms, (*see*

2    Doc. 30 at 8, "under the Agreement, as modified by the Confirmation [Letters], Defendant only

3    owed a contract buyout fee if it offered the Physicians a permanent position at KMC. . ."),

4    KCHA's argument would be unsuitable for summary judgment.  The inquiry would require the

5    Court to perform beyond its permissible scope and weigh the conflicting evidence surrounding

6    modification.  Ultimately, asking the Court to resolve a question of fact and usurp the role of jury.

7    "Modification is a change in the obligation by a modifying agreement [and] the question whether

8    the necessary elements are present is one of fact."  *See Wade v. Diamond A Cattle Co.*, 44 Cal.

9    App.3d 453, 457 (1975).  The Court "is bound by the traditional allocation of function between

10   judge and jury."  *Anderson*, 477 U.S. at 249.

11        Since KCHA failed to show probative evidence supporting modification, the Court finds

12   KCHA has failed to carry its initial burden of showing absence of genuine dispute as to material

13   fact and denies the motion.  "If the moving party fails to bear the initial burden, summary

14   judgment must be denied, and the Court need not consider the nonmoving party's evidence."  *See*

15   *Adickes*, 398 U.S. at 159-60.

16                     2.  Genuine Dispute as to Material Facts Still Exists

17        Even if the Court were to conclude KCHA carried its initial burden of showing an absence

18   of genuine disputed material facts, the Court still would not grant summary judgment because

19   genuine dispute as to material fact still exist.  *See Herbalife Intl. of Am., Inc. v. E. Computer*

20   *Exch.*, Inc., No. 2:22-CV-00347-ODW (AGRX), 2024 WL 1158344, at *5 (C.D. Cal. 2024); *see*

21   *Celotex*, 477 U.S. at 322-23 (The moving party is "entitled to a judgment as a matter of law"

22   because the nonmoving party has failed to make a sufficient showing on an essential element of

23   her case with respect to which she has the burden of proof.).  Assuming KCHA carried its burden

24   and made a preliminary showing, the burden of moving forward would then shift to Weatherby.

25   *See Matsushita*, 475 U.S. at 586 (Once the moving party satisfies its initial burden, the

26   nonmoving party cannot simply rest on the pleadings or argue that any disagreement or

27   "metaphysical doubt" about a material issue of fact precludes summary judgment.).  To carry its

28   burden, Weatherby must go beyond the pleading and show adequately probative evidence

1  creating a triable controversy by identifying specific record evidence and explaining how that

2  evidence defeats summary judgment.  Summary judgment is only warranted and granted if

3  Weatherby fails to carry its burden.

4        Weatherby raises ample genuine disputes of material facts in its Opposition (Doc. 37).

5  For example, in responding to KCHA's contention that Section 2.A[8] provides for modification,

6  Weatherby directs the Court to Section 22. of the Agreement which states, "This Agreement may

7  be modified in writing only, signed by the parties in interest at the time of the modification."

8  Weatherby then explains how Section 22 defeats summary judgment.  (*Id.* at 13.)  Viewing the

9  evidence in light most favorable to the non-moving party, the Court would find Weatherby

10  carried its burden by showing a genuine issue of material fact still exists for the jury to resolve.

11  Specifically, genuine issues as to whether the KCHA the Confirmation Letters modified the

12  Agreement and whether the parties' behavior or course of performance waived the contract

13  buyout fee for the physicians not subject to a Confirmation Letter.  (*Id.* at 3.)  Similarly, drawing

14  all inferences in favor of Weatherby as the nonmoving party, a reasonable jury could find favor of

15  Weatherby's argument.  Accordingly, the Court finds KCHA has not presented sufficient

16  evidence to carry its initial burden negating the third element of Weatherby's breach of contract

17  claim.  "Summary judgment should be entered against a party who does not make a showing

18  sufficient to establish the existence of an element essential to that party's case, and on which that

19  party will bear the burden of proof at trial."  *Nationwide Mut. Ins. Co. v. Zurich Am. Ins. Co.*, No.

20  1:21-CV-00944-TLN-CSK, 2024 WL 4107232 (E.D. Cal. 2024).

21        After finding KCHA did not meet its initial burden of affirmatively showing a valid

22  modification, the Court does not deem it necessary to consider any contingent arguments.  *See*

23  *Nissan*, 210 F.3d at 1107 ("A nonmoving party plaintiff has no obligation to produce anything

24  until the moving party defendant has carried its initial burden of production.")  Specifically,

25  KCHA's arguments regarding Physicians B, doctors not subject to Confirmation Letters, arguing

26  "implied" modification by course of performance and waiver.  (*See* Doc. 30 at 10-11, "[KCHA]

27

28  [8] "Each Confirmation [Letter] shall include the name and specialty of Physician furnishing services hereunder, the dates and location of the Assignment (as defined below), the applicable Contract Buyout Fee (as defined below) and deviations to this Agreement for that Assignment, if any." (Agreement, Ex. A, section 2.A)

1  did not receive Confirmation [Letters] . . .  for Doctors Nicole Thomas, Harry Elshire, Amelia

2  Paisley, and Marvin Atchison.  However, [Weatherby's] consistent use of the Confirmation

3  [Letter] term that only a 'permanent position' would trigger the contract buyout fee, the

4  Agreement has been modified or waived so as to preclude [Weatherby] from prevailing on its

5  Complaint.") However, [Weatherby's] consistent use of the Confirmation [Letter] term that only

6  a 'permanent position' would trigger the contract buyout fee, the Agreement has been modified or

7  waived so as to preclude [Weatherby] from prevailing on its Complaint.")  Because the Court

8  disagrees that KCHA has demonstrated that the Confirmations constituted a modification of the

9  Agreement, KCHA's argument as to the Physician's B fails.

10  3.   KCHA is not Entitled Judgment as a Matter of Law

11         KCHA contends "under the Agreement, as modified by the Confirmation Agreements,

12  Defendant only owed a contract buyout fee if it offered the Physicians a permanent position at

13  KMC prior to November 16, 2020" (Doc. 30 at 8) and Weatherby "cannot show a breach

14  occurred because there is no evidence [KCHA] hired any of the Physicians to a permanent

15  position." (*Id.* at 7.) The Court disagrees.  The "Confirmation [Letters]" **do not** "clearly modify

16  the Agreement as the type of "work" needed to be offered to the Physicians to trigger the contact

17  buyout fee" (emphasis added) (*Id.* at 9.)  Thus, KCHA's argument is legal assertion premised on

18  legal conclusions that result from a misapplication of contract law principles.

19         The parties do not dispute entering an Agreement or that the Agreement is governed by

20  the laws of California.  Under California law, the fundamental rules of contract interpretation are

21  based on the premise that the interpretation of a contract must give effect to the "mutual

22  intention" of the parties.  *See generally Intl. Bhd. of Teamsters v. NASA Services, Inc.*, 957 F.3d

23  1038, 1042 (9th Cir. 2020).  The courts' superseding objective when interpreting a contract is to

24  "give effect to the mutual intention of the parties as it existed at the time of contracting."  *Id.*

25  (quoting Cal. Civ. Code § 1636).  "When a contract is reduced to writing, the intention of the

26  parties is to be ascertained from the writing alone, if possible. . ."  *Id.* § 1639; *see also*

27  *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647, 3 Cal.Rptr.3d 228, 73 P.3d 1205 (2003).

28  Most importantly, "[t]he whole of a contract is to be taken together, so as to give effect to every

part, if reasonably practicable, each clause helping to interpret the other."  Cal. Civ. Code § 1641.

California case law consistently reaffirms the primacy of this principle:

> It is a primary rule of interpretation that contracts must be construed as a whole[,] that is, from their four corners, and the intention of the parties is to be collected from the entire instrument and not detached portions thereof, it being necessary to consider all of the parts to determine the meaning of any particular part as well as of the whole. Individual clauses and particular words must be considered in connection with the rest of the agreement, and all of the writing and every word of it will, if possible, be given effect.

*Intl. Bhd. of Teamsters*, 957 F.3d at 1042 (quoting *Ajax Magnolia One Corp. v. S. Cal. Edison Co.*, 167 Cal. App. 2d 743, 748 (1959); *Moore v. Wood*, 26 Cal. 2d 621, 630 (1945)).

The Agreement contains the following provisions regarding modification: (1) Provision 20 "Sole Agreement" states "this document contains the entire agreement of the parties relating to the services, rights, obligations and covenants contained herein and assumed by the parties respectively.  No inducements, representations or promises have been made, other than those recited in this Agreement. No oral promise, modification, change or inducement shall be effective or given any force or effect[;]" and (2) Provision 22. "Modifications of Agreement.  This Agreement may be modified in writing only, signed by the parties in interest at the time of the modification."  (*See* Ex. A; *see also* provisions "1. Intent of Agreement; 2. Duties of Weatherby; 3. Duties of Client; 4.E Failure to Issue Confirmation; and 6D. Definition of Work – 'an offer to work, said offer being either verbal or written, on a part or full time basis, temporary or permanent, directly as an employee or independent contractor or indirectly when arranged through another staffing company or medical group.'.")

The express language of the Agreement provides the procedure for modification and states modification is only permissible by writing signed by the parties in interest at the time of modification.[9]  Without probative evidence supporting modification, KCHA's argument is premised on concepts contrary to well-established contract law and principles rendering its argument wrong as a matter of law.  For these reasons, and those previously discussed, summary judgment is precluded, and partial summary judgment is unwarranted.

---

[9]  Neither side argues that "the parties in interest" means anything other than "both sides need to sign."

1

2 **C.  Breach of the Implied Covenant of Good Faith and Fair Dealings**

3       KCHA also moves for summary judgment on Weatherby's breach of the covenant of good

4 faith claim arguing "the Court should find that the claim for breach of the implied covenant of

5 good faith is duplicative of the breach of contract claims, since it relies on the same alleged acts

6 and seeks the same relief claimed in the breach of contract action."  (Doc. 30 at 12.)  KCHA

7 asserts the "only substantive claim" Weatherby makes "regarding this cause of action" is that "it

8 was damaged because '[KCHA] unfairly interfered with Weatherby's right to receive the benefits

9 of the Agreement'." (*Id.*)  KCHA cites *Careau & Co. v. Security Pac. Bus. Credit, Inc.* (1990)

10 222 Cal.App.3d 1371, 1395, 1400, and concludes with the following quote: "If the allegations do

11 not go beyond the statement of a mere contract breach and, relying on the same alleged acts,

12 simply seek the same damages or other relief already claimed in a companion contract cause of

13 action, they may be disregarded as superfluous as no additional claim is actually stated.  *Id.* at

14 1395."  (*Id.*)

15       Weatherby contends KCHA "has not come close to meeting its [high] burden" of

16 presenting clear and convincing evidence "that Weatherby intentionally waived its contractual

17 rights" explaining "the only evidence [KCHA] cites in support of its waiver defense consists of . .

18 . confirmation letters" that "do not purport to relinquish any portion of Weatherby's right to

19 contract buyout fees." (Doc. 37 at 20-21.)

20 **1.  Implied Covenant of Good Faith**

21       There is an implied covenant of good faith and fair dealing is implied in every California

22 contract.  *Schertzer*, 109 F.4th at 1213 (citing *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654,

23 684 (1988).  "This duty requires contracting parties to exercise discretion given to them under the

24 contract in a way consistent with the parties' expectations at the time of contracting."  *Boland,*

25 *Inc. v. Rolf C. Hagen (USA) Corp.,* 685 F. Supp. 2d 1094, 1103 (E.D. Cal. 2010).  "A claim for

26 breach of the implied covenant of good faith and fair dealing requires the same elements" as

27 breach of contract, but instead "of showing [the] defendant breached a contractual duty, the

28 plaintiff must show, … defendant deprived the plaintiff of a benefit conferred by the contract in

violation of the parties' expectations at the time of contracting." *Ramsey v. Farmers New World Life Insurance,* No. CV 1:19-405, 2024 WL 3967470, at *5 (E.D. Cal. 2024) (quoting *Boland*, 685 F. Supp. 2d at 1101 (citing *Carma Developers, Inc. v. Marathon Development California, Inc.,* 2 Cal. 4th 342, 372–73, (1992))).  Thus, an implied covenant claim goes beyond a breach of contract and involves "a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Schertzer*, 109 F.4th at 1213 (quoting *Careau & Co. v. Sec. Pac. Bus. Credit, Inc*., 222 Cal. App. 3d 1371, 1394 (1990)).

The Court need not exhaust itself with a thorough analysis as KCHA's grounds its argument for summary judgment on the same reasons it argued entitlement on Weatherby's breach of contract claim.  Accordingly, the Court declines to grant summary judgment on Weatherby's implied covenant of good faith and fair dealing claim.

### CONCLUSION

The Court finds defendant KCHA failed to carry its initial burden of showing no genuine dispute as to material facts and entitlement to judgment as a matter of law.  In addition, the Court opines that even if KCHA had made its preliminary showing, Weatherby has carried its burden in showing genuine material disputes of fact, regarding modification of the parties' Agreement, still exist for the fact finder to resolve.  For these reasons, summary judgment is precluded, and the Court **DENIES** Defendant KCHA motion for summary judgment and **DENIES** partial summary judgment in the alternative.

///

///

///

///

///

///

27

1    ///

2    **III.     PLAINTIFF WEATHERBY'S MOTION FOR SUMMARY JUDGMENT[10]**

3           **A.  Unfair and Unlawful Business Practices**

4           KCHA counterclaimed against Plaintiff Weatherby alleging "Unfair and Unlawful

5    Business Practices in Violation of California Business & Professions Code." (Doc. 19 at 10-12.)

6    KCHA claims the parties' Agreement, "unfairly and unlawfully limits the mobility of individuals

7    who actively seek an opportunity to perform their trade and reducing or eliminating opportunities

8    for employees or individuals to pursue lawful employment of their choice." (*Id.* at 11.)

9    Specifically, "the contract buyout fee, [which] unlawfully restrains physicians from engaging in

10   their lawful profession, trade, or business in violation of Bus. & Prof. Code §16600, et seq., and

11   Bus. & Prof. Code §17200." (*Id.*)

12          Weatherby moves for summary judgment on KCHA's counterclaim asserting its

13   entitlement to judgment on the following (1) "The Supreme Court expressly allows reasonable

14   restraints to protect a party's development efforts from being exploited [;]" (2) "the contract

15   buyout fee is a reasonable restraint [;]" and (3) KCHA lacks standing to bring its Unfair

16   Competition Law claim. (*See* Doc. 31 at 12-14.)

17          **1.  Genuine Dispute as to Material Fact Exists**

18          KCHA argues summary judgment is unwarranted because a genuine dispute exists as to

19   "[w]hether [ Weatherby's] Agreement Violates California Business and Professions Code §

20   16600." (Doc. 35 at 13.)

21

22   _____
[10]   Both parties embedded new arguments and additional facts seemingly relevant to KCHA's motion for summary
23   judgment (Doc. 30) within the briefs related to Weatherby's motion for summary judgment (Doc. 31). For example,
     Weatherby asserts the same arguments it relied in Opposition of Defendant's Motion for Summary Judgment (*see
24   generally* Doc. 37) on Weatherby's claims for breach of contract and breach of the implied covenant of good faith
     and fair dealing and proffers new additional facts relating to the physicians Weatherby presented to KCHA. (*See*
25   Doc. 31 at 7-8, 10-12.) Similarly, Defendant KCHA dedicates various pages of its Opposition (Doc. 35) to curing its
     previously filed motion for summary judgment (Doc. 30) of the alleged defects. (*See* Doc. 35 at 8-13, 17.) KCHA
     also disputes, for the first time, the existence of an "operative agreement." (*Id.* at 5-6, n. 1.)
26          In resolving Defendant KCHA motion for summary judgment (Doc. 30), the Court did not consider the
     additional arguments and facts asserted in any briefing relating to Weatherby's motion for summary judgment
27   (Docs. 31, 35, 44). In its ruling, the Court considered only arguments and material filed in support of and opposition
     of KCHA's motion (Docs. 18,19, 30, 37, 40-41, 46-47). The Court approaches Weatherby's motion for summary
28   judgment in the same manner and considers only the briefing filed in support and opposition of its motion (Docs. 19,
     22, 31-32, 35-36, 38-39, 43-45).

As previously, both parties repurposed and incorporated prior legal arguments (*see generally* Docs. 30, 37).  Most important to the resolution of Weatherby's motion is KCHA's renewed argument regarding modification of the Agreement's Contract Buyout Fee, provision 6A, the very provision KCHA claims constitutes unlawful business practices: "[P]rovision 6.A is an unenforceable non-solicitation/no-hire provision.  Notwithstanding the argument above that the Confirmation Agreements modified the Agreement to only require the contract buyout fee . . . the provision in the Agreement is overly broad and includes an unreasonable unilaterally set buyout fee…"  (Doc. 35 at 13-14.)  In addition, KCHA contends Provision 6A is "overly broad and unreasonable because it applies to doctors who did not even work an assignment from Plaintiff at Defendant's facility" and "limits an individual's ability to engage in a profession, trade, or business."  (*Id.* at 14-15.)

In ruling on Defendant KCHA's motion for summary judgment, the Court found Weatherby satisfied its burden of showing a genuine dispute regarding whether the "Confirmation Letters" modified the Agreement and altered Provision 6A terms.  The dispute still exists; thus, summary judgment is **DENIED**.

### B. Evidentiary Objections

KCHA raises fifteen evidentiary objections (*see* Doc. 36), the majority targeting specific facts alleged (*id.*, *see* Objections 1-11, 14) as inadmissible hearsay, irrelevant, lacking foundation, speculation, and "improper conclusion or ultimate facts"; and Objections 12, 13, and 15 targeting Exhibits A, K, and N as "misleading" and "unsupported"; inadmissible hearsay, irrelevant, or lacks foundation.  (*Id.*)

Weatherby argues for exclusion pursuant FRCP 26(a)(1(A)(i) as to "Mr. Flacks' declaration on the basis that (1) no one from Acute Care Surgery Medical Group, Inc. ("ACSMG") was identified as a potential witness, and (2) the exhibits to Mr. Flacks' declaration were neither identified nor produced."  (Doc. 45 at 1.)  Weatherby also raises ten additional objections "to particular paragraphs of Mr. Flacks' declaration" (*id.* at 4-9).  Finding a genuine dispute precludes summary judgment, the Court need not evaluate the objections and declines ruling.

1   ///

2                                    **CONCLUSION**

3         For reasons discussed, the Court finds a genuine dispute exists and precludes summary

4   judgment, Plaintiff Weatherby's motion for summary judgment is **DENIED**.

5

6   IT IS SO ORDERED.

7         Dated:   **November 8, 2024**

                                             UNITED STATES DISTRICT JUDGE

8

30